IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EPHRAIM WOODS, JR.,<br><br>    Plaintiff,<br><br>v.<br><br>CHERYL ROSS,<br><br>    Defendant. | Case No. 21-2011-DDC-TJJ |
| FATIMAH MUHAMMAD,<br><br>    Plaintiff,<br><br>v.<br><br>CHERYL ROSS,<br><br>    Defendant. | Case No. 21-2012-DDC-TJJ |
| DWIGHT JOHNSON,<br><br>    Plaintiff,<br><br>v.<br><br>CHERYL ROSS,<br><br>    Defendant. | Case No. 21-2013-DDC-TJJ |
| RAASIKH ROBERTSON,<br><br>    Plaintiff,<br><br>v.<br><br>CHERYL ROSS,<br><br>    Defendant. | Case No. 21-2014-DDC-TJJ |

**MEMORANDUM AND ORDER**

Pro se plaintiffs[1] Ephraim Woods, Jr., Fatimah Muhammad, Dwight Johnson, and Raasikh Robertson are individual members of a community once known as the United Nation of Islam (UNOI). Plaintiffs each filed a lawsuit against former UNOI members Kendra Ross and her mother, Cheryl Ross, in the District Court of Wyandotte County, Kansas. They alleged claims for (1) breach of contract, and (2) defamation. After removing the cases to federal court, Kendra[2] moved to dismiss the claims against her. The court granted those motions and dismissed her from each case. But because Cheryl didn't appear in any of those actions and didn't sign any filings made in them, the court took no action on plaintiffs' claims against Cheryl.

Cheryl still hasn't appeared in these cases. So, the Clerk of our Court has entered default against her. Now before the court are plaintiffs' Motions for Default Judgment against Cheryl Ross in each of their respective cases (Doc. 51).[3] Plaintiffs also have filed Motions for a Hearing (Doc. 56). Even though Cheryl is in default, plaintiffs aren't entitled to a default judgment. That's because each one of the Complaints fails to state a claim against her. So, the court denies plaintiffs' Motions for Default Judgment and their related Motions for a Hearing. And, because no amendment could salvage plaintiffs' claims against Cheryl, the court dismisses these cases with prejudice.

---

[1] Because plaintiffs appear pro se, the court construes their filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court can't serve as pro se plaintiffs' advocate. *See id.*

[2] Because Kendra Ross and Cheryl Ross share a last name, this Order often refers to them as "Kendra" and "Cheryl." The court means no disrespect to either individual by its use of their first names.

[3] For simplicity, the court cites documents in the first-filed case in our court, *Woods v. Ross*, No. 21-2011 (D. Kan.), unless otherwise specified, because most filings don't differ in substance between cases.

I.     **Background**

These cases are a spin-off of an earlier case in this court, *Ross v. Jenkins*, No. 17-2547 (D. Kan.). In that case, Kendra Ross filed a lawsuit against Royall Jenkins and several corporate successors in interest to The United Nation of Islam, Inc. She alleged several violations of state and federal human trafficking laws and labor laws. Defendants failed to appear in that case. The court then held a hearing where Kendra adduced evidence of her claims and damages. After concluding that Kendra's evidence sufficed to establish her claims, the court granted Kendra default judgment and awarded her nearly $8 million in damages.

Later, plaintiffs in these cases—filing suit as individual members of the former UNOI—alleged that Kendra had breached a purported membership agreement with the community and defamed the community when she filed her federal lawsuit. Specifically, they argue that Kendra entered a membership agreement with the UNOI as a child. Under this purported agreement, plaintiffs allege, the UNOI would provide Kendra with food, shelter, and education in exchange for Kendra's lifelong servitude to the community. Plaintiffs allege that by leaving the community and later demanding payment for her work in the community, Kendra breached the membership agreement. They also allege Kendra defamed the UNOI and the community when she filed her federal lawsuit, when she was interviewed on NBC's *Today Show*, and when A&E aired an episode about UNOI on a show called "Cults and Extreme Belief."

Notably, plaintiffs make no specific allegations against Kendra's mother, Cheryl. They allege only that she entered into the membership agreement on Kendra's behalf. *See* Doc 1-1 at 27 (alleging that Cheryl agreed to "work within the community" in exchange for "housing, medical, food, clothing, and schooling" for "herself and her children"); *see also id.* at 28 (alleging that Kendra "received the benefits of" the membership agreement while she was "a

3

minor under Mother Cheryl Ross' jurisdiction"); *see also id.* at 33 (alleging that "Cheryl Ross had sole power, authority and jurisdiction over Kendra Ross" during the time frame alleged in Kendra's lawsuit). In essence then, plaintiffs contend that their breach of contract claim against Kendra extends to Cheryl simply because she's Kendra's mother. Plaintiffs don't allege that Cheryl independently breached the membership agreement. Nor do they allege that Cheryl had anything to do with Kendra's alleged defamatory statements.

Kendra removed these cases to federal court and moved to dismiss all the claims asserted against her. On July 21, 2021, the court granted Kendra's motions and dismissed her from these cases. *See* Doc. 36. But, after the court's Order dismissing Kendra from the cases, plaintiffs didn't do anything with their claims against Cheryl, who remained a defendant. So, on August 3, 2021, the court issued a Notice and Order to Show Cause ordering plaintiffs to show cause why the court shouldn't dismiss the claims against Cheryl for failure to prosecute. *See* Doc. 38. Plaintiffs eventually responded, asking for a default judgment against Cheryl. They also objected to the court's Order dismissing Kendra from the case.

On September 2, 2021, the court then issued an Order with two purposes. *See* Doc. 41. *First*, it explained the two-step process for default judgments under Fed. R. Civ. P. 55. The court explained that plaintiffs first must apply for entry of default before they could move for a default judgment against Cheryl. So, the court liberally construed plaintiffs' response to the Show Cause Order as an application for entry of default. And, because Cheryl had failed to appear, plead, or otherwise defend against plaintiffs' actions, the court directed the Clerk to enter default against her under Fed. R. Civ. P. 55(a). But, the court clarified, entry of default "does not entitle the plaintiffs to a default *judgment*." Doc. 41 at 4. The court informed plaintiffs that if their claims were "barred or subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), then

4

the court may deny default judgment." *Id.* (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)). *Second*, the court liberally construed plaintiffs' "objections" to the court's Order dismissing Kendra from the suit as motions for reconsideration. The court denied this aspect of the motions because they merely reiterated arguments the court already had rejected.

Over the next month, plaintiffs filed several "Notices" in our court. *See* Docs. 43, 44, 54, 55. They also sent at least one of those "Notices" to the Tenth Circuit. *See* Docs. 44–46. So, the Tenth Circuit docketed an appeal. Despite sending these filings to the Circuit Court of Appeals, plaintiffs maintained that they never intended to file an appeal. *See* Doc. 54. Eventually, the Circuit dismissed plaintiffs' appeal for failure to prosecute. *See* Doc. 53.

Around the same time, plaintiffs filed their Motions for Default Judgment against Cheryl Ross under Fed. R. Civ. P. 55(b). *See* Doc. 51. Also, they each filed Motions for a Hearing. *See* Doc. 56. These motions ask the court to enter default judgment against Cheryl—notably, focusing exclusively on the breach of contract claim against Cheryl. The motions don't argue any aspect of plaintiffs' defamation claims. Plaintiffs asserted those claims against Kendra only, and the court already has dismissed those claims.

## II.     Legal Standard

Federal Rule of Civil Procedure 55 provides a two-step process for securing a default judgment. As discussed above, plaintiffs have satisfied the first step. The Clerk has entered default against Cheryl under Rule 55(a) because she has "has failed to plead or otherwise defend" plaintiffs' lawsuit. Fed. R. Civ. P. 55(a). This Order decides the second step, applying when a plaintiff has moved for a default judgment under Rule 55(b)(2).

A default judgment is not automatic. Even after entry of default against a defendant, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of

action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation cleaned up). In other words, plaintiffs must still "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). So, if plaintiffs' claims are "barred or [are] subject to dismissal under Rule 12(b)(6)," then the court may deny default judgment. *Bixler*, 596 F.3d at 762.

As under Rule 12(b)(6), when deciding a motion for default judgment, the court must accept as true all well-pleaded factual allegations in the Complaint. *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016). This requirement does not extend, however, to allegations about the amount of damages. *Id.* In the end, the decision whether to enter "default judgment is committed to the sound discretion of the district court[.]" *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).

### III.  Analysis

The remaining claims in these lawsuits target Cheryl Ross, claiming she is liable to plaintiffs for her daughter's alleged breach of a membership agreement with the UNOI, of which plaintiffs are members.[4] Under the alleged agreement, UNOI would provide Kendra with food,

---

[4] Plaintiffs never have asserted a defamation claim against Cheryl. But to the extent their defamation claims against Kendra implicate Cheryl, those claims are without merit. As the court explained in its earlier Order dismissing plaintiffs' defamation claims against Kendra, Kansas law applies. *See* Doc. 36 at 22. Under Kansas law, plaintiffs must show that: "(1) [Cheryl] uttered or wrote false and defamatory words; (2) [Cheryl] communicated these statements to a third person; and (3) plaintiff's reputation was injured as a result." *Dominguez v. Davidson*, 974 P.2d 112, 117 (Kan. 1999).

Plaintiffs haven't shown anything that could satisfy the first two elements for a defamation claim. The defamatory acts that plaintiffs allege—*Kendra*'s lawsuit against Royall Jenkins and the UNOI, *Kendra*'s interview with Megyn Kelly on the *Today Show*, and A&E's segment on UNOI—have no connection to Cheryl. Cheryl was not a plaintiff in Kendra's lawsuit. She didn't appear with Kendra on the *Today Show* interview (nor did she otherwise appear in that segment). And plaintiffs don't allege that Cheryl had anything to do with A&E's episode about the UNOI on the show, "Cults and Extreme Beliefs." Thus, plaintiffs haven't stated a defamation claim against Cheryl.

Also, plaintiffs provided a link to Kendra's *Today Show* interview in their pleadings. *See* Doc. 1-1 at 31. The court viewed and considered the interview in reaching its conclusion because plaintiffs

6

shelter, and education in exchange for Kendra's lifelong servitude to the community. Plaintiffs allege that by leaving the community and later demanding payment for her work, Kendra breached the membership agreement. And—liberally construing plaintiffs' claim—because Kendra "received the benefits of" the membership agreement while she was "a minor under Mother Cheryl Ross' jurisdiction[,]" then Cheryl is liable for Kendra' alleged breach. *See* Doc 1-1 at 28. There are several reasons why plaintiffs' allegations fail to state a claim for breach of contract. The court discusses each reason, below.

In its Order dismissing the claims against Kendra, the court explained that Kansas law applies to plaintiffs' breach of contract claim. *See* Doc. 36 at 21. To assert a breach of contract claim under Kansas law, plaintiffs must establish: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

*First*, plaintiffs don't allege that they personally have had a contract with Cheryl. Plaintiffs allege a convoluted theory about how Cheryl joined the UNOI and how she entered a membership agreement with the community for herself and on Kendra's behalf. But even accepting those allegations as true, plaintiffs fail to allege that *they* are parties to this purported membership agreement between Cheryl and the UNOI. "Kansas law generally recognizes that unless a party has contractual privity, is an intended third-party beneficiary, or is an assignee of a contract, it lacks standing to enforce the terms of an agreement." *Kan. State Univ. v. Prince*, 673

---

referred to it in their pleadings, it's central to their defamation claim, and no party has disputed the authenticity of the video generated by plaintiffs' link. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

F. Supp. 2d 1287, 1297 (D. Kan. 2009) (collecting cases). Plaintiffs never have alleged that they fit within any of the exceptions to the general rule forbidding non-parties to a contract from enforcing the contract's terms. So, the court questions whether plaintiffs even have standing to enforce this purported agreement between Cheryl and the UNOI. To be sure, in their default judgment motions, plaintiffs argue that Cheryl "has a standing 'Verbal Contract' (Oral) with all Members of The United Nation of Islam[.]" Doc. 51-1 at 2. But, even assuming plaintiffs personally entered the membership agreement with Cheryl, that doesn't resolve plaintiffs' other problems, as the court explains next.

*Second*, plaintiffs don't allege that Cheryl breached the agreement. Their allegations focus only on Kendra—claiming she violated the membership agreement by leaving the UNOI and filing a federal lawsuit against the community. Nevertheless, plaintiffs contend, because Kendra was under Cheryl's "jurisdiction[,]" Cheryl is responsible for Kendra's acts. Doc. 1-1 at 28; *see also* Doc. 51-1 at 3 ("Cheryl Ross is instrumental to this case because she alone brought Kendra Ross into The UNOI and had full knowledge and allowed Kendra Ross to receive the benefits and services from the UNOI[.]"). But the court already has determined that plaintiffs haven't alleged any facts that, if true, could make Kendra's actions (or omissions) a breach of the contract. Instead, plaintiffs simply plead conclusions—*e.g.*, Kendra "breached a contract with the community"—and those won't suffice. *See* Doc. 36 at 24–25. In short, plaintiffs haven't alleged any facts capable of supporting a finding or inference of a "breach" by Kendra that plaintiffs could hold Cheryl responsible for. And plaintiffs don't allege that Cheryl independently breached the membership agreement. So, without any allegation of breach, plaintiffs fail to state a breach of contract claim against Cheryl under Kansas law.

*Third*, and last, the purported membership agreement is unconscionable and thus unenforceable. Other members of the UNOI have filed nearly identical lawsuits against Kendra and Cheryl Ross in the United States District Court for the District of Maryland. And in dismissing those lawsuits, the court put it well: "An agreement where members 'volunteer' to work for the community, and are in breach when they choose to *leave*, can only be read as commanding servitude for a modicum of shelter and food. As a contract for indentured servitude, the claim is unconscionable on its face." *Robertson v. Ross*, No. 8:21-CV-0143-PX, 2021 WL 2895887, at *3 (D. Md. July 9, 2021) (applying Kansas law and dismissing plaintiff's breach of contract claim with prejudice).

The court agrees with the District of Maryland in *Robertson* and concludes that any purported agreement between the UNOI and Cheryl Ross for food and shelter in exchange for lifelong servitude is unconscionable on its face. "Public policy forbids enforcement of an illegal or immoral contract[.]" *Frazier v. Goudschaal*, 295 P.3d 542, 554 (Kan. 2013) (quotation cleaned up). The court previously concluded that the UNOI violated several federal and state human trafficking and labor laws when it forced Kendra to work in UNOI businesses and homes without pay for ten years beginning when she was 11 years old. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1163–1171 (D. Kan. 2018). Enforcing a purported agreement allowing such illegal conduct thus would violate public policy. And so, plaintiffs' purported agreement is unenforceable under Kansas law.

For all these reasons, plaintiffs fail to state a breach of contract claim against Cheryl Ross. The court thus denies plaintiffs' Motions for Default Judgment against her, as well as plaintiffs' related Motions for Hearing.[5]

---

[5] Our court's local rule provides: "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative." D. Kan. Rule 7.2. Also, the court may hold a hearing on a

What then, becomes of this case—where the last defendant is in default, but plaintiffs fail to state a claim against her? Typically, dismissals of a claim "follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint[.]" *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991). Nevertheless, our Circuit has explained that "a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Id.* at 1110 (quotation cleaned up).

The court so concludes that this case is a case meeting the standard from *Hall*. The gravamen of plaintiffs' contract theory alleges, in a conclusory fashion, that Cheryl is responsible for Kendra's purported breach of an unconscionable contract for indentured servitude that Cheryl formed with an entire community. It's "patently obvious" that plaintiffs can't prevail on this theory. *Id.* at 1110 (quotation cleaned up). And no amount of amendment could salvage that dispositive failure. The court thus dismisses plaintiffs' remaining claim with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."); *see also Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (affirming district court's sua sponte dismissal of plaintiff's claims with prejudice because it was "patently obvious that [plaintiff] cannot proceed with her claims, and any further opportunity to amend would be futile").

The court recognizes the gravity of this step, especially since plaintiffs appear pro se. But our Circuit has held that "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to

---

motion for default judgment under Fed. R. Civ. P. 55(b). But the court carefully has reviewed plaintiffs' written submissions. The court finds that a hearing will not assist its work.

the courts." *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).  That's especially so where, as here, plaintiffs have had the chance to litigate their claims fully.  Plaintiffs' claims against Cheryl don't differ in substance from their claims against Kendra.  And plaintiffs have fully litigated their claims against Kendra, which the court carefully considered in a 49-page Order.  *See* Doc. 36.  So, in essence, plaintiffs already have had the opportunity to litigate their claims against Cheryl.  Dismissing plaintiffs' claims against Cheryl doesn't infringe on plaintiffs' due process rights, nor does it infringe their right of access to the courts.  *See Curley*, 246 F.3d at 1284

Also, plaintiffs essentially received notice of their deficient allegations from the court's Order dismissing their claims against Kendra.  But they never have proposed any amendments that arguably could salvage their claim—not after the court's Order dismissing Kendra, not after the court's Show Cause Order asking why the court shouldn't dismiss the claims against Cheryl, and not after the court's Order denying reconsideration of its dismissal Order.  In short, the court has moved incrementally in this case to allow plaintiffs every opportunity to present their claims against Cheryl Ross.  But at this late hour, plaintiffs still fail to state a plausible claim against her.  The court thus dismisses plaintiffs' Complaints with prejudice.[6]

## IV.   Conclusion

For all these reasons, the court denies plaintiffs' Motions for Default Judgment and Motions for Hearing, filed in each of their respective cases.  The court dismisses the Complaints in these cases, with prejudice.  The court directs the Clerk to close these cases.

---

[6] Also, the court need not provide explicit notice to plaintiffs before sua sponte dismissing these cases.  Our Circuit has held that "the lack of prior notice of a sua sponte dismissal with prejudice for failure to state a claim is harmless when, as here, the plaintiff has a reasonable post-judgment opportunity to present his arguments to the district court and the appellate court, including the opportunity to suggest amendments that would cure the complaint's deficiencies." *Curley*, 246 F.3d at 1284 (discussing "adequate procedural safeguards to avoid erroneous dismissals" such as "bring[ing] an appeal").

11

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motions for Default Judgment are denied in each of the following cases:

- *Woods v. Ross*, No. 21-2011 (Doc. 51)
- *Muhammad v. Ross*, No. 21-2012 (Doc. 50)
- *Johnson v. Ross*, No. 21-2013 (Doc. 49)
- *Robertson v. Ross*, No. 21-2014 (Doc. 47)

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' Motions for Hearing are denied in each of the following cases:

- *Woods v. Ross*, No. 21-2011 (Doc. 56)
- *Muhammad v. Ross*, No. 21-2012 (Doc. 54)
- *Johnson v. Ross*, No. 21-2013 (Doc. 53)
- *Robertson v. Ross*, No. 21-2014 (Doc. 51)

**AND, IT IS FURTHER ORDERED BY THE COURT THAT** the cases listed above are dismissed, in their entirety, with prejudice.  **The court directs the Clerk to close these cases.**

**IT IS SO ORDERED.**

**Dated this 14th day of February, 2022, at Kansas City, Kansas.**

                                                                              s/ Daniel D. Crabtree
                                                                              **Daniel D. Crabtree**
                                                                              **United States District Judge**